# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

WILLIAM E. CHAPMAN,            :

    Plaintiff,            :

vs.                            :            CA 06-0806-KD-C

MICHAEL J. ASTRUE,             :
Commissioner of Social Security,
                               :
    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and child's insurance benefits. This action has been referred to the Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record, plaintiff's proposed report and recommendation, the Commissioner's proposed report and recommendation, and the parties' arguments at the November 19, 2007 hearing before the Magistrate Judge, it is determined that the decision to deny benefits should be affirmed.

Plaintiff alleges disability due to mild mental retardation and schizophrenia. The Administrative Law Judge (ALJ) made the following pertinent findings:

> 3. The claimant's borderline intellectual functioning is a severe impairment.
>
> 4. The impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4, whether considered individually or in combination with his non-severe impairments.
>
> 5. The claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the bo[d]y of the decision.
>
> 6. The claimant has the following residual functional capacity: unskilled, non-production pace work, with only occasional interaction with the general public.
>
> 7. The claimant is unable to perform any of his past work (20 CFR 404.1565 and 416.965).
>
> 8. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR 404.1563 and 416.963).
>
> 9. The claimant has "a limited education" (20 CFR 404.1564 and 416.964).
>
> 10. The claimant has no transferable skills from any past relevant work (20 CFR 404.1568 and 416.968).
>
> 11. The claimant can perform the job of warehouse worker. Th[ere] [are] a significant number of jobs within that occupation that he can perform.

>     12. The claimant was not under a "disability," as defined in the Act, at any time through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 22) The Appeals Council affirmed the ALJ's decision (Tr. 6-8) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen,* 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler,* 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that Chapman

can perform other work existing in significant numbers in the national economy, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[1]

The plaintiff contends in this case that the following errors were committed: (1) the ALJ erred in failing to find him disabled since July 22, 1998 on the basis that Listing12.05C is met or equaled; and (2) the ALJ erred in failing to reopen his prior SSI applications under 20 C.F.R. §§ 416.1487, 416.1488, and 416.1489. The undersigned considers these issues in reverse order.

**A.   Failure to Reopen Prior Applications.** Plaintiff contends that the ALJ erred in failing to reopen his prior SSI applications. If the ALJ in this case had denied plaintiff's application to reopen his prior applications for SSI

---

[1]   This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987).

benefits it is clear that this Court would have no jurisdiction to review such decision since a denial to reopen a prior final decision "is subject to judicial review only if the merits of the closed disability application are actually reexamined, . . . or if the claimant presents a colorful constitutional claim." *Hall v. Bowen*, 840 F.2d 777, 778 (11th Cir. 1987) (citations omitted); *see also Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) ("We have jurisdiction to review the Secretary's refusal to reopen a prior decision if (1) the claimant raises a colorable constitutional claim, or (2) the record demonstrates that there has been an actual reexamination of the merits of a prior administrative decision."); *Sherrod v. Chater*, 74 F.3d 243, 245 (11th Cir. 1996) ("[S]ubject matter jurisdiction will exist in those cases where 'a social security claim is in fact reopened and reconsidered on the merits to any extent on the administrative level.' . . . Also, judicial review may be had where the claimant raises a constitutional claim."); *Brown v. Sullivan*, 921 F.2d 1233, 1237 (11th Cir. 1991) ("[W]e may not reopen the final denial of an application unless the Secretary has already reexamined the merits of the closed application, or if the claimant presents a colorable constitutional claim."). However, there is no reopening issue in this case that is apparent to the undersigned because nowhere in the decision presently under review is there any mention of the

prior administrative decisions or the *res judicata* effect of same. (*See* Tr. 16-23) Instead, the ALJ's review of the evidence in the case includes testing results from 1989 and 1990 (Tr. 17) as well as evidence from 2000 and 2001 (Tr. 19). Accordingly, there is nothing for the Court to review in this regard.

      **B.**    <u>**Listing 12.05C.**</u>  It is clear in this circuit that Chapman must bear the burden of proving that he has an impairment which meets or is medically equivalent to a listed impairment. *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986) ("We hold that when a claimant contends that he has an impairment meeting the listed impairments entitling him to an adjudication of disability under regulation 404.1520(d), he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency."); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) ("To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. . . . To 'equal' a Listing, the medical findings must be 'at least equal in severity and

duration to the listed findings.'"). To establish presumptive disability under § 12.05C, a claimant must present evidence of "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. In addition, plaintiff must "also satisfy the 'diagnostic description' of mental retardation in Listing 12.05." *Cooper v. Commissioner of Social Security*, 217 Fed.Appx. 450, 452, 2007 WL 543059, *1 (6th Cir. 2007), citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. "'Adaptive functioning' refers to a person's ability to perform activities of daily living and social functioning." *Fischer v. Barnhart*, 129 Fed.Appx. 297, 301-302, 2005 WL 352451, *4 (7th Cir. 2005) (citation omitted).

In this case, the ALJ found that a diagnosis of mild mental retardation was not warranted. (*See* Tr. 18) Instead, the ALJ determined that plaintiff's intellectual functioning falls in the borderline range. (*Id.*; *see* Tr. 22 ("The

impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4, whether considered individually or in combination with his non-severe impairments."))

> The claimant has argued that he is mentally retarded. He asserts that he has been shown to have valid IQ scores of less than 71 on three occasions: December 3, 1993, April 23, 2002 and April 30, 2003. With respect to the testing in 2002 and 2003, those scores were reviewed by a previous administrative law judge and by the Appeals Council and were not found to warrant a finding of mental retardation. Other testing showed higher scores and other professional observations were that the claimant was not retarded.
>
> For example, Blaine C. Crum, Ph.D., administered the Wechsler's Intelligence Scale for Children Revised (WISC-R) in 1989 and the claimant's scores were: Verbal IQ 87, Performance IQ 90 and Full Scale IQ 87. In 1990, he was again administered the WISC-R and achieved a Verbal IQ 91, Performance IQ 92 and Full Scale IQ 91. Moreover, the 2002 testing, which is discussed in Exhibit B-4F[,] warrants little weight in light of the claimant's repeated prevarications. He, for example, "emphatically denied the use of alcohol or any other drugs." Less than 6 months earlier, the claimant admitted to "daily" use of alcohol and marijuana. He also asserted that he had failed to grade and had been suspended repeatedly. Previously, he denied ever failing or being suspended.
>
> The 2003 IQ testing is similarly given little weight. First, David Formwalt, Psy.D., was apparently unaware that he had examined the claimant two years previously and did <u>not</u> diagnose mental retardation. Second, Dr. Formwalt was not aware of the claimant's previous IQ scores in the 90s. Indeed, he wanted additional information "to validate the diagnosis of Mild Mental Retardation." Third, the claimant was not taking his prescribed medication Zyprexa at the time of his testing. Fourth,

the claimant provided a grossly understated account of his substance abuse and work experience. Fifth, Dr. Formwalt did not administer the 15 item test that Patricia McCleary, Ph.D., did to truly assess the claimant's motivation. When his motivation was actually tested by Dr. McCleary, he scored a preposterously low 3 out of 15. Sixth, Dr. Formwalt provided no meaningful analysis of the claimant's adaptive functioning-- how, for example, a mentally retarded citizen would be hired and then perform as a child care supervisor for 15 children, 8 hours a day, 5 days a week.

In addition to the deficiencies in the proof submitted to support a finding of mental retardation are the opinions of other medical health professionals that the claimant is not mentally retarded. For example, Bernard A. Bergman, M.D., and examining psychiatrist, found that, based on vocabulary, the claimant was functioning at the "low average" range of intelligence. He also noted that in light of the claimant's assertion that he saw "little green men," malingering needed to be ruled out.

Ali El-Mensahwi, M.D., examined the claimant and opined that while mild mental retardation should be considered, the claimant's cognitive examination was unremarkable[] and his condition was indicative of "ethanol and marijuana abuse . . . [and] non-compliance with medication."

Dr. McCleary, who examined the claimant, found malingering and that the claimant's functioning was above the mentally retarded level. Indeed, she found "no significant psychological problems" either.

Ellen Eno, Ph.D., reviewed the records and opined that the evidence supported a finding of Borderline Intellectual Functioning as opposed to retardation. Dr. Hinton, another psychologist who reviewed the records in the previous case, opined that the claimant was functioning at the borderline level, not the retarded level. Dr. Smith also found Borderline Intellectual Functioning.

9

> Borderline rather than retarded functioning is also supported by the claimant's work history. He acknowledged that he was paid in cash for his work, which explains why his earnings record does not reflect the work that he described in completing the Exhibits identified above.
>
> The claimant's activities of daily living provide further support for functioning above the retarded level. He performs household chores, reads the Bible, takes daily walks, attends church, helps his grandmother, [and] goes to the movies, shops and cooks. It is noteworthy that he did not allege that mental retardation was a disabling condition; rather, he repeatedly alleged that his problem was that he preferred to be alone.
>
> In concluding that the claimant's impairment is Borderline Intellectual Functioning, not Mental Retardation, a conclusion that this agency has made previously up through the Appeals Council level, I must address two other Exhibits. The first is Exhibit B-9F. No weight is given to this assessment. First, it was completed by someone "for" another person. The person for whom it was completed was a nurse, not an acceptable medical source. Second, the person completing the form chose to ignore the highlighted requirement to explain the basis for the limitations identified. Third, the form was completed without the benefit of a psychological evaluation. Fourth, no diagnosis of any kind was provided as the source for the limitations. Fifth, the limitations described are inconsistent with the observations and opinions of Dr. Smith, Dr. Eno, Dr. Hinton, Dr. McCleary and the office notes, including checked boxes from Mobile Mental Health.
>
> The second Exhibit is B-5F at 6 which lists a diagnosis of mild mental retardation. It is given no weight as it was formulated by an unacceptable medical source and is contradicted by the other evidence described supra.

(Tr. 16-18 (internal citations omitted))

This Court finds that the ALJ's conclusion that plaintiff's proper diagnosis is borderline intellectual functioning, rather than mild mental retardation, is supported by substantial evidence. The March 20, 2002[2] diagnostic impression of consultative psychologist Dr. Patricia McCleary was malingering. (Tr. 210; *see also* Tr. 209 ("He evidenced questionable motivation and effort, initially providing misleading information, and then reluctantly clarifying this information when questioned. He was administered a fifteen item test which is sensitive to motivational factors, and he scored only three out of fifteen which is indicative of malingering.")) She specifically determined that Chapman's intelligence testing scores were "an underestimate of his current level of functioning." (Tr. 210) On May 27, 2004, Dr. C.E. Smith diagnosed plaintiff with borderline intellectual functioning. (Tr. 268; *see also* Tr. 267 ("On cognitive testing he gave the impression of perhaps borderline intellectual functioning and or no organicity. His history was of poor quality and reflected, I believe, an effort to present himself in a good light and also his dull intelligence. For example, he said that he had boxed as a lightweight but did not know the weight limit for that division (135 lbs) and he estimated his current weight as 120 lbs when, in fact, he weighed 149

---

[2]  On this date, Chapman was twenty (20) years of age. (Tr. 208)

lbs.")) This diagnosis is underscored by earlier IQ testing by an examining psychologist (*compare* Tr. 17 ("Blaine C. Crum, Ph.D., administered the Wechsler's Intelligence Scale for Children Revised [] in 1989 and the claimant's scores were: Verbal IQ 87, Performance IQ 90 and Full Scale IQ 87.") *with* Tr. 31 ("Dr. Crum reported that the claimant was functioning in the upper dull average range of intelligence. He had a fluctuating performance on the tasks presented, which likely reflected his overall performance in the scholastic setting. The claimant appeared to need individual instructions as he had problems processing oral information and oral instructions. Dr. Crum further reported that he appeared to be more of a visual learner and might need things laid out specifically for him, [] as well as the use of other sensory modalities with regard to learning tasks.")) and the Mobile County Board of School Commissioners (*compare* Tr. 17 ("In 1990, he was again administered the WISC-R and achieved a Verbal IQ 91, Performance IQ 92 and Full Scale IQ 91.") *with* Tr. 31 (IQ scores placed plaintiff "in the average range of intellectual functioning.")), as well as the reports of non-examining physicians, Dr. Ellen Eno (Tr. 254 ("IQ scores are questionable. Multiple factors are involved, i.e.[,] malingering, head injury (?), EC, drug usage. ADLs & claimant's verbal conversations at CE would tend to support Borderline

IQ.")), and Dr. Donald E. Hinton (*see* Tr. 34 ("In evaluating this case, the Administrative Law Judge has considered the opinion of the State Agency psychiatrist, Donald E. Hinton, Ph.D. Dr. Hinton considered the claimant's psychosis, borderline intellectual functioning, and history of alcohol and marijuana abuse and found that the claimant has the ability to understand, remember and execute short, simple instructions and attend for 2 hours.")). In addition, another examining psychiatrist, Dr. Dr. Bernard Bergman, on June 28, 2000, estimated Chapman's intelligence to be "LOW AVERAGE BASED ON VOCABULARY." (Tr. 196) Finally, as noted by the ALJ, a diagnosis of borderline intellectual functioning is supported by plaintiff's work history (*see* Tr. 125-133), particularly his work as a teacher's aide at a daycare center which he described as requiring him to supervise fifteen (15) preschoolers for eight hours a day, five days a week (Tr. 127 ("[I] played games with them, took them to lunch, [and] made sure they picked up behind themselves.")), as well as his reported daily activities (*see* Tr. 18).

  Because the ALJ correctly determined that plaintiff functions in the borderline range of intellectual functioning, Chapman has not satisfied his burden of proving that he has impairments which meet or medically equal Listing 12.05C. More specifically, Chapman has not shown that he meets the

diagnostic description for that listing. *See Fischer v. Barnhart*, 309 F.Supp2d 1055, 1062 (N.D. Ill. 2004) ("In order to prove his impairment meets listing 12.05C, plaintiff must demonstrate that it satisfies the diagnostic description for the listed impairment."), *aff'd*, 129 Fed.Appx. 297 (7th Cir. 2005). Inasmuch as plaintiff raises no other issues on appeal, the ALJ's decision denying him benefits is due to be affirmed.

## **CONCLUSION**

The Magistrate Judge recommends that the decision of the Commissioner of Social Security denying plaintiff disability insurance benefits and child's insurance benefits be affirmed.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 4th day of December, 2007.

   s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

          __s/WILLIAM E. CASSADY_____
          UNITED STATES MAGISTRATE JUDGE